IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Electronically Filed)

| | |
|---|---|
| FRANK J. NAMATH ) | |
| ) | Civil Action No. |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| COUNTY OF BEAVER, PENNSYLVANIA ) | |
| ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

**COMPLAINT**

**NATURE OF THE ACTION, JURISDICTION AND VENUE**

1. This is an individual action under the Rehabilitation Act of 1973 (Rehab Act), as amended (29 U.S.C. §791 et seq.), the Civil Rights Act of 1871, 42 U.S.C. §1983, as amended, and Pennsylvania state common law to correct unlawful employment practices on the basis of disability; to stop retaliation against Plaintiff for exercising his civil rights; to correct past deprivations of his civil rights; and, to recover damages for wrongful termination as against public policy and to make Plaintiff whole.

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 and, for supplemental state claims, 28 U.S.C. §1362. This action is authorized and instituted pursuant to the Rehab Act and Section 1983.

3. The actions and policies alleged to be unlawful were committed in and around Beaver, Pennsylvania, where Defendant is located and where Plaintiff worked and, therefore, this

action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and the venue is proper.

## PARTIES

4. **Plaintiff Frank J. Namath (hereinafter referred to as "Plaintiff" or "Namath"), has resided at all relevant times at 2533 Ridge Road Ext., Baden, PA 15005. Plaintiff was employed by Defendant County of Beaver, PA, from on or about December 12, 1996, until he was terminated on or about August 31, 2007.**

5. **At all relevant times, Defendant County of Beaver, PA (hereinafter referred to as "Defendant," or "Beaver County," or "the County" ), is a county established under the laws of the Commonwealth of Pennsylvania, with offices at 810 Third Street, Beaver, PA 15009.**

6. **At all relevant times, Defendant Beaver County has been subject to the Rehab Act and Section 1983.**

7. **Defendant is a person within the meaning of 42 U.S.C. §1983.**

## BACKGROUND AND STATEMENT OF CLAIMS

8. **Plaintiff was employed as a laborer (Maintenance 2) by Defendant in its Department of Public Works from on or about December 12, 1996, until he was terminated on or about August 31, 2007.**

9. **Plaintiff earned $14.50 per hour with occasional overtime.**

10. Plaintiff performed his job satisfactorily throughout his employment with Defendant.

11. Plaintiff was assigned primarily to the County ice arena where he operated the Zamboni machine.

12. On or about July 24, 2001, Plaintiff was injured while working at the Economy Park Swimming Pool owned by the County and suffered injuries to his neck/upper spine and right arm.

13. Plaintiff underwent treatment and ultimately surgery and remained disabled for a period of time.

14. Plaintiff eventually reached a settlement of his workers' compensation claim with Defendant and the insurance carrier.

15. Following the surgery and rehabilitation Plaintiff was able to return to work and continued to work until he was laid off on January 1, 2005.

16. In the month or so before the lay-off Plaintiff had been placed on a medical leave of absence due to a psychological condition arising from a physical assault from a former County supervisor.

17. Beginning in March of 2005 Plaintiff began contacting Defendant to determine when he would be recalled.

18. Plaintiff's calls to Defendant were prompted by Plaintiff hearing of co-workers with his seniority being recalled.

19. Plaintiff was denied the return to work on the basis that he had restrictions associated with his various conditions.

20. Plaintiff was told the only position available was at the ice arena and he could not work there because he had a disability.

21. The County made no effort during this time to engage in a good faith effort to either determine Plaintiff's restrictions or accommodate him.

22. Rather, the County simply applied a policy of "100% or not at all" and refused to consider returning Plaintiff to work.

23. Defendant was mistaken in its assumption that Plaintiff had restrictions but simply perceived Plaintiff had these restrictions based on Plaintiff's medical history.

24. Over the next several months Plaintiff provided documentation to clarify Plaintiff's then-current medical condition, and the fact that he did not have restrictions, but Defendant still refused to consider this documentation.

25. Over the ensuing eighteen months Plaintiff made repeated attempts to be recalled to his regular assignment, or an equivalent alternative, but Defendant continued to refuse to consider the return or engage in any meaningful discussions to determine what, if any, restrictions Plaintiff had.

26. **Defendant continued to argue Plaintiff had medical restrictions which prevented Plaintiff from performing his previous job without any restrictions.**

27. **In other words, Defendant persisted in its position that Plaintiff had to be "100%" or would not be permitted to return to work at all.**

28. **Plaintiff grieved Defendant's refusal to return him to work through Plaintiff's union.**

29. **On October 5, 2006, following an arbitration hearing, the arbitrator upheld the grievance, found that Plaintiff was improperly not recalled to work, and ordered Defendant to calculate and pay whatever was owed Plaintiff for the time since he had been denied recall.**

30. **Plaintiff returned to work in his earlier position at the ice arena on or about October 31, 2006.**

31. **Since that time, notwithstanding the order from the arbitrator to calculate and pay Plaintiff his back pay, Defendant has refused to abide by the order and has refused to pay Plaintiff his back wages.**

32. **Plaintiff returned to work and performed his job satisfactorily.**

33. **In August 2007, however, Plaintiff was accused of theft by Defendant.**

34. **The accusation was knowingly false.**

35. Defendant contrived the charges in retaliation for Plaintiff having successfully grieved the failure to recall.

36. Defendant also retaliated against Plaintiff for his having applied for and ultimately receiving workers' compensation benefits.

37. Plaintiff was not given the opportunity to defend himself or otherwise respond to the allegations made about him in August 2007.

38. Plaintiff was terminated on or about August 31, 2007.

39. Plaintiff was not given a Loudermill hearing prior to the imposition of this disciplinary action.

40. Given an adequate opportunity to respond to the contrived allegations Plaintiff would not have been terminated.

41. Plaintiff has a history of a substantial impairment within the meaning of the Rehab Act.

42. Plaintiff has been regarded by Defendant as having such a substantial impairment within the meaning of the Rehab Act.

43. Plaintiff has a policy of "100% or not at all," which policy violates the Rehab Act.

44. Defendant failed to give due process to Plaintiff prior to his termination, specifically, by failing to conduct a Loudermill hearing.

45. **Defendant also terminated Plaintiff in retaliation for Plaintiff having successfully claimed workers' compensation benefits and receiving a settlement for these benefits.**

46. **Plaintiff has lost his job, suffered significant wage and benefits loss, has suffered significant injury to his reputation, has and will continue to incur legal fees and has and will continue to suffer significant emotional distress as a result of the illegal actions by Defendant.**

### COUNT I: DISABILITY DISCRIMINATION (REHAB ACT) DISCRIMINATION / FAILURE TO ACCOMMODATE / 100% POLICY

47. **Plaintiff hereby incorporates Paragraphs 1 through 46 of his Complaint as though the same were more fully set forth at length herein.**

48. **Plaintiff is a qualified individual with a disability.**

49. **There were jobs available that Plaintiff was qualified to perform in 2005 and 2006 prior to his recall.**

50. **Defendant's refusal to accommodate Plaintiff was unreasonable.**

51. **It was not an undue hardship for Defendant to accommodate Plaintiff, either in his prior position or in another available position.**

52. **Defendant's failure to accommodate is a violation of the Rehab Act.**

53. Defendant also has a policy of requiring its workers to be "100%" in order to return to work.

54. This policy is a *per se* violation of the Rehab Act.

55. Defendant knew its actions against Plaintiff were in violation of the Rehab Act.

56. Plaintiff has suffered tangible and intangible losses resulting from Defendant's violation of the law.

57. Plaintiff is entitled to lost wages and benefits unlawfully denied, compensatory damages, interest and other appropriate relief, including reinstatement.

**COUNT II: WRONGFUL TERMINATION - VIOLATION OF PUBLIC POLICY**

58. Plaintiff hereby incorporates by reference Paragraphs 1 through 57 of his Complaint as though the same were more fully set forth herein.

59. Defendant refused to recall Plaintiff in 2005 and 2006, and then terminated Plaintiff on or about August 31, 2007, because of Plaintiff having filed workers' compensation claims and settling these claims.

60. Defendant's denial of work in 2005 and 2006, and termination of Plaintiff in 2007, violates public policy.

61. Plaintiff has lost income, been denied benefits, and suffered mental anguish and

humiliation as a result of this violation.

62. Plaintiff is seeking reinstatement, lost wages, lost benefits, compensation for pain and suffering, attorney's fees and costs.

**COUNT III: DEPRIVATION OF CIVIL RIGHTS - DUE PROCESS / LOUDERMILL (42 U.S.C. §1983)**

63. Plaintiff hereby incorporates by reference Paragraphs 1 through 62 of his Complaint as though the same were more fully set forth herein.

64. Plaintiff has a right to due process before the deprivation of his interest in his job, which includes the right to be notified of the deprivation of his interest and a right to be heard.

65. Notwithstanding this right, Defendant terminated Plaintiff without due process (Loudermill hearing).

66. The actions taken by Defendant were under color of state law.

67. Plaintiff has and will continue to suffer irreparable harm as a result of this violation.

68. This action by Defendant constitutes a deprivation of Plaintiff's civil rights in violation of 42 U.S.C. §1983.

**PRAYER FOR RELIEF**

69. WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Grant a permanent injunction enjoining Defendant, its officers, successors, and

assigns and all persons in active concert or participation with them from engaging in any employment practice which violates the Rehab Act, Section 1983 or public policy.

B. Order Defendant to make Plaintiff whole, by paying appropriate back pay with prejudgment interest, liquidated damages and/or other affirmative relief necessary to eradicate the effects of its unlawful employment actions and practices.

C. Order Defendant to pay compensatory and punitive damages to Plaintiff in an amount to be determined at trial.

D. Order Defendant to pay the costs and reasonable attorney's fees incurred by Plaintiff.

E. Grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

s/Joseph H. Chivers
Joseph H. Chivers, Esquire
PA ID No. 39184
Suite 600
312 Boulevard of the Allies
Pittsburgh, PA  15222
(412) 227-0763
(412) 281-8481 FAX
jchivers@employmentrightsgroup.com

Counsel for Plaintiff
Frank J. Namath

DATED: January 2, 2008